CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE VA
FILED

June 02, 2006

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

ROY M. TERRY, JR., RECEIVER, *et al.*,

    *Plaintiffs,*

v.

MODERN INVESTMENT COMPANY LIMITED, *et al.*,

    *Defendants.*

CIVIL ACTION NO. 3:04-CV-00085

OPINION AND ORDER

JUDGE NORMAN K. MOON

This matter is before the Court on Receiver's motion for partial summary judgment on choice of law for fraudulent conveyances, filed January 13, 2006.

## I. Background

From 1998 to 2001, Terry L. Dowdell orchestrated a classic Ponzi scheme, defrauding would-be investors of millions of dollars. Dowdell sold fictitious securities in a fraudulent trading program, the "Vavasseur Program," which was purportedly being operated by Vavasseur Corporation ("Vavasseur"), a Bahamian corporation owned and operated by Dowdell. To facilitate recovery of investor losses, this court appointed Roy M. Terry, Jr. and the law firm of DurretteBradshaw PLC as Receiver for Dowdell and his various business entities.[1]

The Receiver filed this action against Modern Investment Company, Ltd., ("Modern

---

[1] For additional information on Dowdell's fraudulent scheme and the appointment of the Receiver, see *Terry v. Virginia June*, No. 3:03CV00047, 2003 U.S. Dist. LEXIS 12873 (W.D. Va. July 21, 2003); *Terry v. June*, 420 F. Supp. 2d 493 (W.D. Va. 2006).

1

Investment"), Kevin O'Keefe, Karen O'Keefe, and Collin O'Keefe[2] (collectively, the "Defendants") on October 27, 2004, seeking to recover funds in excess of $1.3 million dollars that the Receiver alleges were fraudulently transferred from Dowdell's Vavasseur Corporation to the Defendants, and from Defendant Modern Investment to the O'Keefes.

Kevin O'Keefe first learned about an investment opportunity with Dowdell through a business associate, Robert June, Jr. ("June"), and, after meeting with Dowdell, decided to invest in the Vavasseur program. June and Dowdell instructed Kevin O'Keefe to contact Lennox Paton, a Bahamian law firm that served as Vavasseur's registered agent and corporate office, to set up a Bahamian company and establish a foreign bank account. Sometime in early 2000, Kevin O'Keefe met with June in the Bahamas. On March 9, 2000, with the help of Lennox Paton, Kevin O'Keefe caused Defendant Modern Investment Company, Ltd. to be incorporated under Bahamian law, and very soon thereafter also caused a bank account to be opened at HandelsFinanz bank. (Depo. of Kevin & Karen O'Keefe at 25-26). On or about May 12, 2000, Kevin O'Keefe made his initial investment in the Vavasseur program.

Who controlled the flow of funds through the HandelsFinanz account to Kevin O'Keefe's Comerica bank account in Michigan is unclear. The O'Keefes assumed that Modern Investments was the account holder of the HandelsFinanz account, but were not certain. (*Id.* at 79-80). Lennox Paton was a registered agent of Modern Investment in the Bahamas, (*id.* at 75), and it apparently was a signatory on the account: Sean Nottage, an agent of Lennox Paton, authorized wire transfers from the HandelsFinanz account to Kevin O'Keefe's Michigan account. (*Id.* at 77-

---

[2] Collin O'Keefe is the son of Karen and Kevin O'Keefe, and was six years old at the time of the October 28, 2005 deposition of Karen and Kevin O'Keefe. (*Id.* at 48). Kevin O'Keefe named Collin and Karen O'Keefe as beneficiaries of Modern Investment. (*Id.*).

2

78). It is unclear whether Kevin or Karen O'Keefe were signatories too. (*Id.*). They have no recollection of ever receiving a bank statement from HandelsFinanz. (*Id.* at 26-27). They also do not remember how Kevin O'Keefe would communicate a request to Lennox Paton that money be wired from the HandelsFinanz account to his Michigan account. (*Id.* at 78-79). Karen O'Keefe recalled only that the HandelsFinanz account was a formal requirement "that Modern Investment needed to have"; that Vavasseur money may or may not have flowed through the HandelsFinanz account; and that if it did, "it would stay for like a day and get wired to Kevin O'Keefe." (*Id.* at 27-28). The O'Keefes purported to be able to obtain records for the HandelsFinanz account, (*id.* at 74), but have failed to produce these documents in response to the Receiver's discovery requests.[3]

From approximately March 2000 to February 2001, the HandelsFinanz account ostensibly received Vavasseur "profit" distributions from Dowdell's AmSouth bank account in Florida, which were repatriated via wire transfer to Kevin O'Keefe's Michigan account as needed. From February 2001 to December 2001, the HandelsFinanz account was closed and Defendants' Vavasseur "profit" distributions were reinvested into the Vavasseur program.

On or about January 11, 2002, Modern Investment was reincorporated in the Commonwealth of Dominica, and on or about January 24, 2002, Kevin O'Keefe caused the opening of a bank account in Dominica for the reincorporated company at Overseas Development Bank and Trust ("ODBT"). From February 2002 to April 2002, the ODBT account ostensibly received Vavasseur "profit" distributions from international banks by wire

---

[3] The Receiver represents that the issuance of a Letter of Request to obtain these records would be futile, because HandelsFinanz never registered as an entity doing business in the Bahamas as required by law and the Bahamian authorities have represented that they do not know how to serve HandelsFinanz. (Rec. Supp. Memo. at 4 n.2).

3

transfers, which were repatriated via wire transfer to the Michigan bank account as needed. The Receiver represents that Vavasseur effectively controlled the "flow" of funds through the ODBT account until it reached Kevin O'Keefe's Michigan account:

> The Receiver believes that Dobb White & Company ("DWC") (Vavasseur's U.K. agent) had an ownership interest in and control over ODBT . . . The Receiver has no evidence that amounts DWC had ODBT record on its books had any economic substance. For example, DWC had ODBT make book entries to increase depositors' accounts for Vavasseur 'profit' distributions with an offsetting increase in ODBT funds being administered by DWC . . . [T]here was no physical movement of funds into or out of ODBT to back these 'profit' distributions . . . . [N]o wire transfers occurred until the Defendants were allowed to make withdrawals from ODBT, at which point DWC would wire transfer funds (usually comprised of principal invested by other participants in the Vavasseur program) located in bank accounts outside of Dominica to the Defendants' Michigan bank accounts. Under such circumstances, it cannot be said that the book entries ODBT recorded for the Defendants' account at ODBT had any economic substance, nor that such transactions were conveyances beyond Vavasseur's dominion and control until funds were actually received at Defendants' Michigan bank accounts.

(Rec. Supp. Memo. at 6-7). The Receiver also notes that although Kevin O'Keefe appears to have power of attorney for Modern Investment's bank account at ODBT, neither he nor his wife recall ever receiving bank statements from ODBT, and he had trouble making a withdrawal from the ODBT account. (Depo. of Kevin & Karen O'Keefe at 52-53; 130-35; 142-44).

## II. Discussion

On February 27, 2006, this Court entered an Order and Memorandum in a related matter, *Terry v. June*,[4] holding, *inter alia*, that (1) Virginia's choice of law rules apply to the Receiver's fraudulent conveyance claims; (2) a fraudulent conveyance claim is most properly characterized as sounding in tort for choice of law purposes, and therefore the governing law is the law of the "place of the wrong," i.e. where the last event necessary to complete the fraudulent conveyance occurred; (3) the last event necessary is the place where the transfer is completed; and (4) under

---

[4] 420 F. Supp. 2d 493 (W.D. Va. 2006).

4

the Virginia law of funds transfers, a transfer made by wire is deemed completed in the jurisdiction where the receiving bank is located.

This Court also noted that depending on the substance of Bahamian law of fraudulent conveyances, a Virginia court could refuse to apply the Bahamian law on public policy grounds. *Id.* at 506. However, the Court declined to discuss the possible application of the public policy exception at the time because the parties had not yet briefed the Court on the substance of Bahamian fraudulent conveyances law. *Id.* Because the same issues are presented in this matter, on March 10, 2006, the Court held a telephonic hearing at the conclusion of which its set forth a schedule for the filing of supplemental briefs.

In its supplemental memorandum of points and authorities on choice of law for fraudulent conveyances, the Receiver argues that the Court should put the burden on the Defendants to prove that transfers to HandelsFinanz and ODBT were beyond Vavasseur's dominion and control and thus "completed" transfers to the Defendants within the meaning of the Court's February 27, 2006 decision in *Terry v. June*. Thus, the Receiver raises an issue that the Court must address before scrutinizing Bahamian (and Dominican) law of fraudulent conveyances: whether Vavasseur distributions to the Defendants made by wire transfer were "completed" in the Bahamas and Dominica, or were not actually "completed" until they reached Kevin O'Keefe's Comerica account in Michigan.

The Court finds that the Receiver has made a sufficient prima facie showing that the Defendants did not have exclusive dominion and control over the HandelsFinanz account and that control in fact was exercised by Vavasseur's agent, Lennox Paton. Coupled with Defendants' lack of records and failure to obtain and turn over HandelsFinanz bank records as

5

promised, and Kevin and Karen O'Keefe's failures of memory, the Court believes that the Defendants should bear the burden of establishing that wire transfers to HandelsFinanz Bank were beyond the dominion and control of Vavasseur. If the Defendants fail to satisfy this burden **within twenty-one (21) days** of the date of this Opinion and Order, the Court will enter Judgment finding that the March 2000–February 2001 wire transfers of Vavasseur profit distributions were not "completed" until they reached Kevin O'Keefe's Michigan account.

However, with respect to transfers made after Modern Investment was reincorporated in Dominica in January 2002, the Court requests that the Receiver again supplement its Memorandum of Points and Authorities **within ten (10) days** of the date of this Opinion and Order to cite to competent evidence supporting its assertions that the book entries ODBT recorded for Modern Investment's account at ODBT had no economic substance and that Vavasseur program-related wire transfers to Kevin O'Keefe's Michigan bank account were received from banks located outside of Dominica. If the Receiver satisfies this burden of production, the burden of proof will shift to Defendants to offer competent evidence **within twenty-one (21) days** of the Receiver's submission to establish the existence of actual wire transfers to the ODBT account that were beyond the dominion and control of Vavasseur.

It is so ORDERED.

The Clerk of the Court is directed to send a certified copy of this Opinion and Order to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

*[date]*
Date